UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAVEL BONDAR,<br><br>                    Plaintiff,<br><br>     -against-<br><br>ACCEL CAPITAL LLC,<br><br>                    Defendants. | Case No.: 1:20-CV-03721 (GDB) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Boris Yankovich, Esq.
YANKOVICH LAW, P.C.
1960 Bergen Avenue
Brooklyn, NY 11234
Telephone: (929) 269-5696
yankovichlaw@gmail.com

*Attorneys for Plaintiff*

Defendant Accel Capital LLC, a New York limited liability company ("ACCEL"), by and through its undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 12(b)1 and 12(b)(6), hereby moves to dismiss Plaintiff Manuel Perez's ("Plaintiff") Class Action Complaint ("Complaint") and in support states as follows:

## INTRODUCTION

Plaintiff brings the instant putative class action against Accel based on the allegation that he received *one* text message allegedly sent through an automatic telephone dialing system ("ATDS") without prior express written consent in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  According to Plaintiff, his alleged injury for his phone capturing this text message including the: the text message invaded Plaintiff's "privacy," spent "five minutes investigating the unwanted text" and the text message "took up memory on Plaintiff's phone." Plaintiff does not allege what he was doing, or where he was when the alleged text was received, of that the telephone even rang or vibrated. Plaintiff does not allege that he responded to the text in any manner or that the text cost him a cent or in any way adversely impacted the utility of his cellular telephone. The Complaint nevertheless demands trebled statutory damages for Plaintiffs and all members of a proposed nationwide class. (Complaint, ¶ 72). Not only does Plaintiff's Complaint fails to establish a viable TCPA claim, Plaintiff's Complaint does not establish Article III and should be dismissed as further explained below.

The facts alleged in the Complaint do not establish Article III standing, as the Eleventh Circuit has recently made clear in *Salcedo v. Hanna*. Plaintiff has failed to demonstrate that they suffered a concrete, actual injury as a result of their purported receipt of a single text message. His cursory allegations that their privacy was somehow invaded or that they suffered actual, actionable harm through receipt of one text message, if deemed adequate, renders the constitutional requirements for standing a nullity. The TCPA is a statute that is often used to engage in judicial extortion, and Plaintiff's

attempt to create a class action and windfall damages through *one* text message that he allegedly received pushes the law considerably beyond common sense. It should be concluded that he has not alleged and did not suffer a concrete injury-in-fact and, as a result, this action should be dismissed with prejudice.

Furthermore, Plaintiff does not adequately allege that the at-issue text messages was sent using an ATDS, a necessary element of his claim. Instead, Plaintiff offers only the conclusory assertion that an ATDS was used, which is insufficient, particularly in light of the facts contained in the Complaint that indicate an automated system was not used. The one text message Plaintiff allegedly received, as described in the Complaint, does not exhibit the signs of being transmitted through an ATDS and instead contain the hallmarks of transmission via regular human interaction: The text messages were sent from a separate local telephone numbers rather than an SMS short code and there was only one message.

Lastly, the Court should dismiss the Complaint because the Plaintiff fails to adequately plead that Defendant was responsible for sending the text message. Indeed, Plaintiff simply makes a conclusory allegation that "the text message originated from telephone number 724-888-5067, and number which *upon information and belief* is owned and operated by Defendant." However, it is fact that Defendant not only does not own or operate this number, but has never utilized a marketing campaign or heard of Plaintiff at all until receipt of Plaintiff's demand letter. Plaintiff further fails to assert any agency allegation between Defendant or any third-party who might have sent the text message on its behalf. The Complaint's conclusory allegations – without any factual support – that Defendant was somehow responsible for sending the text message, are not enough to state a plausible claim for relief under the TCPA. Accel did not violate the TCPA, and Plaintiff's Complaint is legally infirm, warranting dismissal.

## LEGAL STANDARD

### a. 12(b)(1)

Article III of the United States Constitution limits the jurisdiction of the judicial branch to cases and controversies and "standing to sue" is "a doctrine rooted in the traditional understanding of a case or controversy . . . and developed in [the] case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016). To establish standing, Plaintiff "must have suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The injury in fact must be "fairly traceable to the challenged conduct of the defendant" and "likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. More than a "bare procedural violation, divorced from any concrete harm" is required to satisfy Article III's injury-in-fact requirement. Id. at 1549; Meyers, 843 F.3d at 727.

"Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. Injury in fact is a constitutional requirement, and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id*. at 1547-48; *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) (Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (because the injury-in-fact requirement "is a hard floor of Article III jurisdiction," it "cannot be removed by statute."). Moreover, the Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement." *Raines*, 521 U.S. at 819. As the Supreme Court has recently

cautioned, "[i]n an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so." *Ariz. Christian Sch. Tuition Org. v. Winn.*, 563 U.S. 125, 146 (2011).

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements and, at the pleading stage, "the plaintiff must 'clearly...allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547. Where a plaintiff fails to establish standing, the court lacks jurisdiction and the case must be dismissed. See generally Meyers, 843 F.3d at 725-29.

### b. 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir.2010). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121

(2d Cir.2007) (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). To decide the motion, the court "may consider facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture. LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir.2010) (internal quotation marks and citation omitted).

## LEGAL ARGUMENT

**1. The Court should dismiss the complaint because Plaintiff has no Article III standing.**

As this case is about one text message, Plaintiff has not and cannot allege the type of concrete harm that meets the injury-in-fact requirement of Article III. Article III of the U.S. Constitution limits federal courts' jurisdiction to certain cases and controversies, and requires that a plaintiff establish that he or she has standing to sue. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). There are three elements required to establish Article III standing: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Salcedo v. Hanna*, No. 17-14077, 2019 WL 4050424, (11th Cir. Aug. 28, 2019) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016)). The first element, which requires a "concrete injury even in the context of a statutory violation," (id. at 3 (quoting Spokeo 136 S. Ct. at 1548-49)), is at issue here.

The Eleventh Circuit just recently held that receiving a single unsolicited text message does not generate a "concrete injury in fact that establishes standing to sue in federal court." *Salcedo*, 2019 WL 4050424 at 1. The Salcedo court analyzed the legislative history of the TCPA, and the Supreme Court's decision in *Spokeo* — which concluded that plaintiffs must allege concrete injuries and not rely on mere statutory violations to establish standing — to determine that the "brief, inconsequential annoyance" of a TCPA violation is not one of the "real but intangible harms" that Congress intended for the TCPA to remedy. 2019 WL 4050424 at 7. In other words, a TCPA violation may be "[a]nnoying, perhaps, but

not a basis for invoking the jurisdiction of the federal courts." Id.

Here, Plaintiff makes sparse allegations of the "harm" they supposedly "suffered" as a result of the text messages at issue: (1) "their privacy has been violated"; (2) "he spent five minutes investigating the unwanted text message"; (3) the texts invaded was and intrusion on "their seclusion;" and (4) the text message "took up memory on his phone." Compl. at ¶ 46-49. However, as the Eleventh Circuit made clear in Salcedo, Plaintiffs' conclusory harms — if one could call them that — are not bases for invoking the jurisdiction of the federal courts. *See*, *e.g., Hampton v. Barclays Bank Delaware*, No. 18-4071-DDC-ADM, 2019 WL 4256371, at *6 (D. Kan. Sept. 9, 2019) (applying Spokeo and finding that plaintiffs allegations of "a bare procedural violation" did not satisfy the concrete injury requirement of Article III standing). Thus, Plaintiffs do not have Article III standing and this case should be dismissed.

Like Salcedo, Plaintiff received only one text message. But even looking at the alleged quality of Plaintiff's conclusory allegations of harm, Plaintiff's claims must fail. Salcedo instructs that the quantity of calls is not the determinative question for Article III standing under the TCPA, the quality of the alleged injury is. In other words, "[there is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be." *Salcedo*, 2019 WL 4050424 at *7 (quoting Saladin v. City of Milledgeville, 812 F.2d 687, 691 (11th Cir. 1987)). Like Salcedo, Plaintiff has not "alleged anything like enjoying dinner at home with [their] families] and having the domestic peace shattered by the ringing of the telephone. Nor [have they] alleged that [their] cell phone[s] [were] searched, dispossessed, or seized for any length of time." *Id*. As the Eleventh Circuit elaborated, "[t]he chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts." *Id*. The same is true of the *one* fleeting text message at issue here.

Plaintiff does not allege that they responded to the texts, thus they wasted no time "addressing

or otherwise responding to the texts." Even if they had, the "brief, inconsequential annoyance" of responding to a text — which Plaintiff did not do — is not the "real but intangible harms" that Congress intended for the TCPA to remedy. *Salcedo*, 2019 WL 4050424 at 7-8 ("concrete harm from wasted time requires, at the very least, more than a few seconds").

The Eleventh Circuit also dealt with Plaintiffs' remaining allegations of harm:

With respect to his allegations of invasion of privacy, we look to the generally accepted tort of intrusion upon seclusion, which creates liability for invasions of privacy that would be "highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. The requirement that the interference be "substantial" and "strongly objectionable]" instructs us that a plaintiff might be able to establish standing where an intrusion on his privacy is objectively serious and universally condemnable. Simply sending one text message to a private cell phone is not closely related to the severe kinds of actively intermeddling intrusions that the traditional tort contemplates. Salcedo's reasoning would equate opening your private mail—a serious intrusion indeed—with mailing you a postcard.

Salcedo [also] asks us to compare the traditional torts of trespass and nuisance, but we find them also to be distinct both in kind and in degree. Trespass requires intentionally "enter [ing] land in the possession of the other," id. § 158(a), and private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land," id. § 82ID. Although, as we have noted, Congress was concerned about intrusions into the home when it enacted the TCPA, Salcedo has alleged no invasion of any interest in real property here. Furthermore, even in the context of nuisance to real property, in Florida, "[m]ere disturbance and annoyance as such do not in themselves necessarily give rise to an invasion of a legal right." *A & P Food Stores, Inc. v. Kornstein*, 121 So. 2d 701, 703 (Fla. 3d Dist. Ct. App. 1960). The text message is thus not closely related to these traditional harms because it is not alleged to have infringed upon Salcedo's real property, either directly or indirectly.

Salcedo also asks us to consider the personal property torts of conversion and trespass to chattel.

Conversion is an interference with chattel "which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A. Salcedo's allegations are nowhere near a complete and permanent dominion over his phone, so recourse to this serious kind of tort is unhelpful. The same is true for the tort of trespass to chattel, which involves intentionally "using ... a chattel in the possession of another." Id. § 217(b). *Salcedo*, 2019 WL 4050424, at *6-7 (emphasis added).

Additionally, should this Court disagree with the holding of *Salcedo*, Plaintiff's allegations still utterly lack any facts that could result in any finding that the one text message to Plaintiff caused him any actionable harm. Courts across the country have dismissed actions brought for bare statutory violations since the Supreme Court's holding in *Spokeo*, holding that such allegations to not suffice to establish Article III standing. In *Meyers*, for example, the Seventh Circuit considered *Spokeo's* holdings in the context of an alleged violation of the Fair Credit Reporting Act ("FRCA"). The plaintiff claimed that defendant violated the FRCA when it gave him a receipt showing his credit card's full expiration date, but sought only statutory damages (in addition to class certification). *Meyers*, 843 F.3d at 725-26. The Seventh Circuit concluded, in light of *Spokeo* and other precedent, that plaintiff had not suffered any actual harm because he discovered the violation immediately and nobody else ever saw the non-compliant receipt. *Id*. at 727-29. Congress had sought to limit FRCA lawsuits to consumers suffering from actual harm, but plaintiff was not such a person and therefore lacked standing. *Id*. Plaintiff here has similarly relied on vague, conclusory allegations of statutory violations, with generic assertions of harm related nuisance and privacy. *See* Complaint at ¶¶ 46-49. Even if sufficiently particular, these alleged damages are so de minimis that they cannot rise to the level of a cognizable injury.

The Supreme Court has held that "[t]here is...a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40 (9th Cir. 2007) (de minimis injury alleged

in complaint was "too trifling of an injury to support constitutional standing"). For example, in *Hernandez v. Path, Inc.*, 2012 U.S. Dist. LEXIS 151035, *1-4 (N.D. Cal. Oct. 19, 2012), the plaintiff alleged that a cell phone application he downloaded had caused "diminished mobile device resources" and the loss of "two to three seconds of battery capacity." The district court found these allegations of diminished resources were so de minimis that they could not establish Article III standing. The same holds true here. Plaintiff vaguely alleges -- at most -- nuisance and privacy concerns from Defendant's alleged text message *which he never even responded to*. Based on Plaintiff's allegations, this amounts to (generously) a couple of minutes of Plaintiff's time, which is so negligible as to be unquantifiable. Notably, Plaintiff does not actually allege that some other party was attempting to call the number identified in the Complaint during which she could not take such calls. As held by the U.S. Supreme Court, such "harm" is not sufficient to invoke the jurisdiction of the federal courts.

Numerous courts have dismissed TCPA lawsuits that rely on similarly conclusory and de minimis allegations of harm since *Spokeo*. See *Romero v. Dep't Stores Nat'l Bank*, 2016 U.S. Dist. LEXIS 110889, at *10 (S.D. Cal. Aug. 5, 2016) (granting motion to dismiss TCPA claims because "Plaintiff has not and cannot demonstrate that any one of Defendants' over 290 alleged violations of the TCPA, considered in isolation, actually caused her a concrete harm"); *Ewing v. SQM US, Inc.*, 2016 U.S. Dist. LEXIS 143272, at *7 (S.D. Cal. Sept. 29, 2016) (dismissing TCPA action with prejudice and rejecting plaintiff's claim that he " 'sustained injury when he had to waste time answering and addressing the robo-call,' and that he was injured insofar as the call depleted his phone's battery, requiring him to recharge it."); *Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, 2016 U.S. Dist. LEXIS 140033 (N.D. Cal. Oct. 7, 2016) (dismissing TCPA junk fax claims despite plaintiff's allegations that junk fax recipients lose the use of their fax machines, paper, and ink toner, as well as the loss of time dealing with junk faxes, which interrupt the recipient's privacy); *Smith v. Aitima Med. Equip., Inc.*, 2016 U.S. Dist. LEXIS 113671, at *13 (C.D. Cal. July 29, 2016) (dismissing TCPA action with

prejudice because "[a]ny depletion of Plaintiff's battery, or aggravation and nuisance, resulting from only one call, is a de minimis injury . . . not sufficient to confer standing."); *Susinno v. Work Out World, Inc.*, No. 15-5881, 2016 U.S. Dist. LEXIS 113664 (D.N.J. 2016), ECF No. 31 (granting motion to dismiss after finding that TCPA plaintiff had not suffered an injury in fact from only one unwanted cell phone call); *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*, No. 2:16-cv-01012, 2016 U.S. Dist. LEXIS 145947 (W.D. La. Oct. 19, 2016) (dismissing TCPA claims where plaintiff alleged statutory violation and made only general reference to the harms contemplated by Congress).

This Court should follow suit. Plaintiff's generic allegations regarding the sort of harms that one text message may impose upon their recipients are insufficient to meet the threshold for jurisdiction in this Court. Because Plaintiff has not alleged a concrete and particularized injury-in-fact, he lacks Article III standing and the case must be dismissed

**2. The Court should dismiss the complaint because Plaintiff fails to state a claim**

The TCPA makes it unlawful for a person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system... (iii) to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(l)(A). Therefore, to state a claim under the TCPA, a plaintiff must allege that (1) the defendant made a call to a cell phone, (2) by the use of an automatic dialing system and (3) without prior express consent of the called party. *See Echevvaria v. Diversified Consultants, Inc.*, No. 13 Civ. 4980(LAK)(AJP), 2014 WL 929275, at 4 (S.D.N.Y. Feb. 28, 2014) (citation omitted); *see, e.g., Pugliese v. Prof'l Recovery Serv.*, Inc., No. 09-12262, 2010 WL 2632562, at *7 (E.D.Mich. June 29, 2010).

Here, Plaintiff's Complaint fails to state a claim because Plaintiff does not allege enough facts to plausibly plead that an ATDS was used. If a text message is not sent via an ATDS, it falls outside the scope of the TCPA altogether. See 47 U.S.C. § 227(b)(l)(A). The TCPA expressly defines an ATDS

as "equipment which has the capacity-(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S. C. § 227(a)(l). In 2015, the FCC attempted to broaden the definition of ATDS, but the FCC's Order was overturned. *See ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) ("ACA International"). After the *ACA International* decision, courts have held that "equipment qualifies as an ATDS only if it has the capacity to 'function ... by generating random or sequential telephone numbers and dialing those numbers.'" *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 939 (N.D. Ill. 2018) (quoting Dominguez v. Yahoo, Inc., 894 F.3d 116, 121 (3d Cir. 2018)).

Indeed, since ACA International was decided, both the Second and Third Circuits have applied the D.C. Circuit's ruling and held that plaintiffs can no longer rely on the broad definition of an ATDS set forth in the FCC's 2015 Order. *See Dominguez*, 894 F.3d at 119 ("In light of the D. C. Circuit's holding [ACA International], we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling. [Plaintiff] can no longer rely on his argument that the Email SMS Service had the latent or potential capacity to function as autodialer. The only remaining question, then, is whether ... the Email SMS Service had the present capacity. The D.C. Circuit's *ACA International* ruling is binding precedent. The Hobbs Act directs review of FCC orders to a single court of appeals. See 28 U.S.C. §§ 2342-44. "The decision of that court is then binding on all circuits." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 930 (9th Cir. 2018) (citing Peck v. Cingular Wireless, LLC, 535 F.3d 1053, 1057 (9th Cir. 2008)); ; , 894 F.3d 473, 477 (2d Cir. 2018) (noting that the D. C. Circuit's holding in ACA International "invalidated [the FCC's 2015] Order and hereby removed any deference we might owe ... it," and ruling that "the term 'capacity' in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software").

To allege adequately that calls were made using an ATDS, a complaint must do more than parrot the statutory language. Plaintiff's "formulaic recitation of the elements" of his claim will not do. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 US. at 678. A TCPA plaintiff must do more than regurgitate these statutory elements to avoid dismissal. *Baranski v. NCO Fin. Sys., Inc.,* No. 13 CV 6349 (ILG) (JMA), 2014 WL 1155304, at 6 (E.D.N.Y. Mar. 21, 2014) ("Plaintiffs need not plead 'specific technical details' regarding [the defendant's] use of an ATDS, but they must at least describe … the facts about the calls or the circumstances surrounding the calls that make it plausible that they were made using an ATDS.") Complaints containing nothing more than bare, conclusory and generic allegations of a defendant's purported ATDS use routinely are dismissed by courts throughout the country. *See, e.g., Baranski*, 2014 WL 1155304, at 6; *Speidel v. JP Morgan Chase & Co.*, No. 13-cv-852-FtM-29DNF, 2014 WL 582881 at *2 (M.D. Fla. Feb. 13, 2014) (granting motion to dismiss TCPA claim where plaintiff merely recited statutory language concerning ATDS use); *Jones v. FMA Alliance Ltd.*, No. 13--11286--JLT, 2013 WL 5719515, at 1 (D.Mass. Oct. 17, 2013) ("A 'bare allegation that defendants used an ATDS is not enough' "; and holding that "[s]imply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim"); *Clayton v. Aaron's Inc.*, No. 13-cv-219, 2013 WL 3148174, at 3 (E.D. Va. June 19, 2013) ("Plaintiff fails to make a single factual allegation to support his claim that Defendant used automatic dialing rather than manually sending individualized messages about Plaintiff's outstanding debt or using some other system"); *Friedman v. Massage Envy Franchising, LLC*, No. 12-cv-02962-L-RBB, 2013 WL 3026641, at 2 (S.D. Cal. June 13, 2013) (dismissing TCPA claim where ATDS allegations "are nothing more than a 'formulaic recitation of the elements of a cause of action,' and do nothing more than assert a speculation"). The same result is warranted in the instant case.

Here, the allegations Plaintiff provides that support the inference that an ATDS was used are conclusory assertions lifted directly from the TCPA's statutory text. ("The systems utilized by

Defendants [sic] has [sic] the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, en masse, in an automated fashion without human intervention."), with 47 US.C. § 227(a)(l) (The term 'automatic telephone dialing system' means equipment which has the capacity-- to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.").

Beyond these threadbare recitals of the statutory text, Plaintiff offers only two additional facts regarding the text messages, both of which rebut Plaintiffs claims and support the inference that no ATDS was used: (1) he lists the telephone number from which the text message was sent (Complaint,¶ 31); and (2) he states the date and content of the at-issue text message (Complaint, ¶23). Additionally, Plaintiff carefully avoids disavowing that he previously interacted with the send of the text message or provided his telephone number to that individual/entity, which, as courts have held, indicates the messages were targeted and not sent through an ATDS. These pieces of information contained in the Complaint indicate that the text messages were sent through normal human interaction and that an ATDS was not used.

The first fact Plaintiff provides – the telephone number from which the message was sent – rebuts his conclusory assertion that an ATDS was utilized. In Paragraph 31 of the Complaint, Plaintiff alleges that "text messages originated from telephone number 724-888-5067, a number which upon information and belief is owned and operated by Defendant." Plaintiff thus admits that the text messages did not originate from an SMS short code-i.e., a series of five or six numbers that do not resemble a traditional ten-digit telephone number-which are used by automated systems to send text messages. Courts find that when a text message comes from an SMS short code, that indicates the messages were sent by an ATDS. *See, e.g., Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2015 WL 11713593, *4 (S.D. Fla. Nov. 10, 2015) ("text messages ... were sent 'en mass' from a short code");

Jenkins v. LL Atlanta. LLC, No. 1: 14-CV- 2791-WSD, 2016 WL 1029524, at *l, *4 (N.D. Ga. Mar. 9, 2016) (use of short code supported inference that ATDS was used). Here, however, the text message came from an actual telephone number, not an SMS short code, meaning the additional facts Plaintiff provides regarding the facts and circumstances of the messages supports the inference that no ATDS was used.

In an attempt to evade the fact that the text messages were sent from a standard telephone number, Plaintiff, without support, claims the normal ten-digit telephone number used was something called a "long code" – a term Plaintiff apparently invents to make the number seem similar to the short codes discussed in the cases cited above. (Complaint, ¶33-34). Despite offering a description of what a "long code" supposedly is, Plaintiff offers no facts suggesting that the standard telephone number used was indeed such a "long code," indicating the ten-digit number was exactly what it appears – a standard telephone number. As short codes and standard ten-digit phone numbers (or "long codes") are the only two types of phone numbers, any suggestion that a "long code" is an indicia of the use of an ATDS necessarily leads to the absurd conclusion that use of any type of phone number to send a text message suggests the use of an ATDS.

Second, Plaintiff sets forth the date and content of the one text messages he allegedly received in Paragraph 23 of his Complaint. The text message was sent on December 9, 2019.

To determine whether a plaintiff has sufficiently pleaded the use of an ATDS, Courts examine the number of text messages and whether requests to stop receiving text messages were ignored, indicating use of an automated system. *See, e.g., Adams* at 8 (finding plaintiff adequately alleged use of an ATDS because complaint stated plaintiff received 310 calls and that "Defendant ignored Plaintiffs numerous demands that Defendant cease calling"); *Jenkins*, 2016 WL 1029524, at * 1, 4 (holding plaintiff "barely" alleged enough facts to support inference ATDS was used when complaint contained allegation that plaintiff received 75 text messages from short code and requests to stop were not

answered); *Legg v. Voice Media Grp.*, Inc., 990 F. Supp. 2d 13 51, 13 54 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS).

Here, several aspects of the messages Plaintiff allegedly received indicate no ATDS was used. First, the fact that Plaintiff received only one message indicates the message was targeted rather than repeatedly blasted to recipients as in the cases in which use of an ATDS was inferred. Second, the personable and individualized contents of the message, i.e. the specific pre-approval for $250K. Third, Plaintiff makes no allegation that he attempted to opt out and received an automated response or received no response, which could indicate use of an ATDS.

Finally, Plaintiff does not disavow that he provided his telephone number to Accel; rather, Plaintiff makes only the technical statement that "[a]t no point in time did Plaintiff provide Defendant with his express written consent to be contacted using an ATDS." (Complaint, ¶28). Plaintiffs failure to disavow prior interactions between the parties supports the inference that Plaintiff was sent a targeted message and that no random or sequential number generator was used. *See Gragg v. Orange Cab Co.*, 942 F. Supp. 2d 11] 1, 1114 (W.D. Wash. 2013) (holding fact that plaintiff "carefully avoid[ed] stating that he did not provide his wireless number to defendants" inferred no use of an ATDS because the "existence of a business relationship and plaintiffs provision of his phone number when requesting services raise an inference of personal, rather than automated, interactions"); *see also Keim*, 2015 WL 11713 593, at 4 (fact that messages were sent from short code and that plaintiff "never provided his cell phone number to Defendants" supported inference ATDS was used).

Plaintiff's Complaint offers a recitation of the statutory definition of ATDS and provides only a thin set of facts regarding the messages he allegedly received – which on balance suggest no automated system was used. Plaintiff accordingly-at most-provides a legal conclusion that an ATDS was utilized, which is simply insufficient at this stage. Moreover, Plaintiff's alleged facts, including the

use of standard telephone number and the gap between the two texts, create the opposite inference: that the texts were not sent using an ATDS. Plaintiff accordingly fails to state a claim for violation of the TCPA, and the Court should dismiss his Complaint.

## CONCLUSION

Plaintiff has not alleged facts from which the Court can draw a reasonable inference that Accel used an ATDS to send the one text messages to Plaintiff. The Court should therefore grant the motion and dismiss the Complaint in its entirety.

**Facts and Background**

Dated: New York, New York
July 15, 2020

YANKOVICH LAW, P.C.

By: /s Boris Yankovich

Boris Yankovich, Esq.
YANKOVICH LAW, P.C.
1960 Bergen Avenue
Brooklyn, NY 11234
Telephone: (929) 269-5696
yankovichlaw@gmail.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2020, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF and served upon all parties or counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/Boris Yankovich

## SERVICE LIST

**VIA CM/ECF and FIRST CLASS MAIL**

SHAMIS & GENTILE, P.A.
*Attorneys for Plaintiff,*
*Pavel Bondar*
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299